**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Bradley J. MILLER, Defendant and Appellant.**

**Crim. No. 940231.**

Supreme Court of North Dakota.

April 13, 1995.

Stephen R. Dawson, Asst. State's Atty., Fargo, for plaintiff and appellee.

William Kirschner, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

Bradley John Miller appealed from a judgment entered upon a jury verdict of the county court, Cass County, finding him guilty of driving under the influence of alcohol. Because the jury instructions accurately reflected the law of the case, the trial court did not err in its admissibility-of-evidence rulings, nor did the trial court abuse the physician-patient privilege, N.D.R.Evid. 503, in considering testimony from a hospital nurse, we affirm.

On the morning of October 27, 1992, Cass County Sheriff's Deputy Mike Grande was dispatched to an accident scene on a low-maintenance dirt road near Mapleton, North Dakota. When he arrived at the scene at 8:50 a.m., he found a pickup with "substantial front-end damage" in a field about eighty feet from the road. He also "found two ... injured individuals" on the ground outside of the pickup. One was seated with his back against the left rear wheel. The other, Miller, was lying in the field approximately ten to fifteen feet from the pickup. Mr. Miller was "semi-conscious" and had a "severe laceration to his upper lip." There was a large amount of blood on his face, chin, and shirt. His shirt appeared to be "wet because of blood."

While the "first responder" and the ambulance crew tended to Miller, Deputy Grande helped stabilize Miller's head and neck, assisted in placing an oxygen mask on Miller's injured face, and aided in transporting the injured on stretchers to the ambulances. During this time, Deputy Grande noticed a strong odor of alcoholic beverages emanating from Miller.

While Miller was transported to St. Luke's Hospital in Fargo, Deputy Grande investigated the accident scene. From his study of the visible tracks of the vehicle and the condition of the pickup, he concluded that the vehicle had traveled across the field until it struck the bottom of the ditch on one side of the roadway. At that point, according to his testimony, the pickup "flew over the roadway ... and struck the bottom of the ditch" on the other side of the roadway before continuing "out into the field approximately 80 feet" and coming to a stop. The driver's side of the pickup's windshield contained damage in the shape of a star. There was one "empty alcoholic beverage on the floorboard on the driver's side of the pickup."

In an interview later at the hospital, Miller confirmed to Deputy Grande that he was the driver of the pickup. He told the deputy that he thought the accident occurred between 2:00 a.m. and 2:30 a.m. During the interview, which took place at approximately 11:00 a.m., the deputy again noticed that Miller smelled of an alcoholic beverage. He advised Miller on the implied-consent law, placed him under arrest for driving under the influence, and requested a blood test. Deputy Grande watched the nurse draw a blood sample from Miller and personally delivered the sample to the State Toxicologist's laboratory. The blood-alcohol concentration was .14 percent.

Miller was charged with driving under the influence of alcohol pursuant to subsection

39–08–01(1)(b), N.D.C.C. Before trial, he moved to suppress evidence of the blood test. Judge Georgia Dawson, citing the fact that "[n]o testimony or evidence was produced at the suppression hearing regarding any events between the time of the accident at approximately 2:00 a.m. ... and the time that Deputy Grande arrived at the scene at 8:50 a.m.," granted the motion. She found that:

> "The evidence presented is insufficient for a reasonable person to determine when and where Bradley Miller was drinking alcohol prior to the time the sample was withdrawn from him and what relationship exists between his blood alcohol at the time the sample was withdrawn and his blood alcohol and/or intoxication at the time he was driving." [1]

Subsequently, Miller discovered a familial relationship existed between the judge and the prosecutor. On his demand, he was granted a change of judge, and Judge Frank Racek took over the case. Judge Racek informed the parties that he would not change Judge Dawson's suppression ruling unless he was presented with additional evidence unavailable to Judge Dawson at the time of her ruling. During the trial, and with the jury absent, Judge Racek heard testimony for the purpose of providing foundation for the admission of the results of the blood test into evidence. This testimony included Deputy Grande's opinion that Miller could not have had anything to drink from the time of the accident to the time he was discovered. The deputy testified that:

> "My opinion is that he didn't have anything to drink or eat in that—since he sustained the injury. He had a severe cut lip. His face was—still had dirt caked on it from being dried on his face from the blood. He was very dirty around the mouth area. He was semi-conscious, he was not very responsive. I would—in my opinion—no, that's the last thing that he would have been doing is drinking anything at that point in his condition."

During the same hearing without the jury present, Nancy Blatsky, a nurse from St. Luke's Hospital, testified that she did not observe the defendant drinking from the time of his arrival by ambulance to the time she drew the blood sample for the blood test. The parties stipulated to the fact that Miller was not administered any alcohol while being transported to the hospital by ambulance. Neither the nurse's testimony nor the deputy's opinion was heard by the jury.

The trial court instructed the jury that:

> "[t]he State satisfies its burden of proof only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:
>
> 1) That on or about the 27th day of October, 1992, the Defendant, Bradley Miller, drove a motor vehicle in Cass County, North Dakota, on a highway, street or on public or private areas to which the public has a right of access for vehicular use; and,
>
> 2) That the Defendant was under the influence of intoxicating liquor."

The trial court also instructed the jury that:

> "[t]he phrase 'under the influence of intoxicating liquor' is a flexible term. The mere fact that the driver of a motor vehicle may have consumed intoxicating liquor does not necessarily render the driver 'under the influence of intoxicating liquor.' The circumstances and effect must be considered.
>
> "On the other hand, the driver need not be intoxicated or in a state of drunkenness to be 'under the influence of intoxicating liquor.' This expression covers not only all the well-known and easily recognized conditions and degrees of intoxication, but also any abnormal mental or physical condition which is the result of drinking intoxicating liquor and which tends to deprive a driver of that clearness of intellect or control which the driver would otherwise possess. Whether the Defendant was 'under the influence of intoxicating liquor' is a question of fact for you to determine."

■ Miller takes issue with these instructions. He argues that the only definition of

---

1. The State attempted to appeal Judge Dawson's order. We dismissed the appeal because it was not authorized by section 29–28–07(5), N.D.C.C. *State v. Miller*, 512 N.W.2d 469 (N.D.1994).

driving under the influence of alcohol provided by statute is found in subsection 39–08–01(1)(a), N.D.C.C., and requires the state to prove "an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle." He cites *State v. Vogel,* 467 N.W.2d 86 (N.D. 1991). In *Vogel,* we stated that in subsection 39–08–01(1)(a), N.D.C.C., the legislature had defined *"one variation* of the crime of actual physical control while under the influence." *Id.* at 90 [emphasis added]. We did not decide that this was the exclusive definition of DUI or actual physical control.

To decide that subsection 39–08–01(1)(a), N.D.C.C., is the only definition of DUI would require us to completely ignore subsection 39–08–01(1)(b). That subsection makes it a crime to "drive or be in actual physical control of any vehicle ... [while] under the influence of intoxicating liquor." Under subsection (b), a defendant may be convicted of DUI if the state proves beyond a reasonable doubt that "the defendant was driving a vehicle upon a public highway ... while ... under the influence of intoxicating liquor so as 'not to possess the clearness of intellect and control of himself that he would otherwise have.'" *State v. Kimball,* 361 N.W.2d 601, 603 (N.D.1985) [citing *State v. Halvorson,* 340 N.W.2d 176, 178 (N.D.1983) ]. The trial court properly instructed the jury on the definition of driving under the influence of alcohol.

Miller next contends that the trial court erred in admitting into evidence the results of the blood test. Section 39–20–07, N.D.C.C., governs the admissibility of evidence of the amount of alcohol in a person's blood at the time the person is alleged to have driven while under the influence of alcohol. "The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the

state toxicologist." *Id.* § 39–20–07(5). Both Miller and the State stipulated that the blood was properly obtained and the test was performed by an appropriately certified individual using methods and devices approved by the state toxicologist.

Miller argues that the results of the blood test, administered approximately nine hours after the accident, are not relevant to the amount of alcohol in his blood at the time of the accident. We disagree. Although evidence from a blood-alcohol test administered more than two hours after driving is not admissible to prove DUI under the per se rule in section 39–08–01(1)(a), it "may be sufficient evidence for the trier of fact to convict a defendant for violating § 39–08–01(b), (c) or (d), N.D.C.C." *City of Grand Forks v. Soli,* 479 N.W.2d 872, 875 (N.D. 1992). We conclude that under the circumstances of this case and the provisions of section 39–20–07, N.D.C.C., the results of Miller's blood test were properly admitted into evidence. *Accord Commonwealth v. Arizini,* 277 Pa.Super. 27, 419 A.2d 643, 650 (1980) ["There is no question that the blood test, even though taken more than two hours after the accident, was admissible. So long as a blood test is indicative of a defendant's condition at a relevant time, it is admissible and subject to attack or contradiction by other competent evidence."]; *Williams v. State,* 737 P.2d 360, 363 (Alaska Ct.App.1987) ["That a particular piece of evidence is contradicted or does not conclusively prove what its proponent suggests does not render it inadmissible."].

Miller also argues that the trial court's consideration of certain testimony of the nurse during the hearings regarding foundation for admitting the blood test results violated the doctor-patient privilege found in Rule 503, N.D.R.Evid. We consider this issue in order to clarify our recent decision in *State v. Schroeder,* 524 N.W.2d 837 (N.D. 1994). In *Schroeder,* we stated:

"We follow the ordinary meaning of 'communications' and hold that the physician-patient privilege authorized by N.D.R.Evid. 503 applies to information and observations made by a physician for purposes of diagnosis or treatment of the pa-

tient's medical condition. Compare *State v. Irish*, 223 Neb. 578, 391 N.W.2d 137 (1986) [information that is not obtained for purposes of diagnosis or treatment of medical condition is not confidential communication]. In this case, Dr. Tassin testified that his observations and examination of Schroeder were for the purpose of diagnosis and treatment of a possible closed head injury. We therefore conclude that the trial court erred in allowing Dr. Tassin to testify about those observations and his opinion that Schroeder was under the influence of alcohol."

*Id.* at 842 [footnotes omitted].

■ There is no indication that the nurse's observation that Miller did not consume alcohol while under her care was for the purpose of diagnosis or treatment. *Compare State v. Raymond*, 431 A.2d 453, 456 (Vt.1981) [holding that a nurse's testimony that she smelled alcohol on the defendant must be suppressed because the nurse testified that the observation was "necessary to enable her to act in her professional capacity"]. Thus, her testimony would not have implicated the physician-patient privilege. We note that our conclusion here is consistent with our recognition in *Schroeder* that the scope of the privilege "depends upon the specific language of the statute or rule authorizing it." 524 N.W.2d at 840.

■ Miller also maintains that it was error for the trial court, during the foundational hearing, to allow Deputy Grande to testify regarding his opinion whether Miller would have been drinking after suffering the laceration to his lip. A trial court's disposition of motions to suppress evidence will not be reversed if after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination and the decision is not contrary to the manifest weight of the evidence. *E.g., State v. Konewko*, 529 N.W.2d 861 (N.D. 1995). This standard recognizes the trial court's opportunity to weigh the credibility of the witness and the testimony presented. *City of Grafton v. Swanson*, 497 N.W.2d 421 (N.D.1993).

■ Rule 701, N.D.R.Evid., limits the opinion testimony of lay witnesses to those that are "rationally based on the perception of the witness and ... helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue." *See also State v. Bohl*, 317 N.W.2d 790 (N.D. 1982). Witnesses who are not experts in medicine may still testify regarding the seriousness of wounds when the facts testified to are such that "[a]ny reasonable person with common sense is capable of expressing a view on such matters without first having to be qualified or treated as an expert witness." *State v. Schimetz*, 328 N.W.2d 808, 815 (N.D. 1982). Deputy Grande observed the lacerations to Miller's face and mouth. The drinking process is within everyone's common knowledge. Thus, the opinion was rationally based on Deputy Grande's perception and, because it aided the court in understanding Miller's ability to drink following the accident, was admissible under Rule 701, N.D.R.Evid.

■ Finally, Miller contends that the evidence was insufficient to support the jury verdict. We disagree. "To successfully challenge the sufficiency of the evidence on appeal, a defendant must convince us that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *State v. Breding*, 526 N.W.2d 465, 469 (N.D.1995). "[W]e determine only whether there is competent evidence that reasonably tends to prove guilt and fairly warrants the conviction." *Id.* We believe the evidence before the jury was sufficient for it to reasonably find that Miller was the driver of the pickup and that he was under the influence of alcohol at the time of the accident.

We affirm.

SANDSTROM, NEUMANN and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

I join in all of the majority opinion except its analysis of the physician-patient privilege. I believe the nurse's observation of her patient, Miller, was privileged and should not have been admitted to establish foundation

for the blood test. However, because there was sufficient foundation for admission of the blood test without the nurse's "testimony," the error was harmless, so I concur.

The nurse's observation that Miller did not consume alcohol while under her care was certainly derived from her care and treatment of Miller and was relevant to her care and treatment of Miller, whether or not she expressed it. If Miller had drunk alcohol, he may have required different medical and nursing responses. He was under the nurses' observation for purposes of care and treatment. The result of this case will make nurses and medical staff persons regular witnesses in DUI cases. That is unwise, practically, as well as professionally. It grossly interferes with the physician-patient relationship and the trust and confidence a patient, until now, could freely place in that relationship.