**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Joanne Francis CHIHANSKI, Defendant and Appellant.**

Cr. No. 950143.

Supreme Court of North Dakota.

Nov. 30, 1995.

David Thomas Jones (argued), Assistant State's Attorney, Grand Forks, for plaintiff and appellee.

Robin L. Olson (argued), Evans & Olson Law Office, Grand Forks, for defendant and appellant.

NEUMANN, Justice.

Joanne Chihanski appeals from a Grand Forks County District Court judgment of conviction entered upon a jury verdict finding her guilty of driving under the influence. We affirm.

Chihanski argues on appeal the trial court erred when it denied her motion to suppress a statement made without benefit of *Miranda* warnings. She raises two issues for our consideration: (1) whether the statement "no" made before taking an Intoxilyzer test and in response to a police officer's question "have you put anything in your mouth since the time of arrest" is testimonial, thus requiring *Miranda* warnings, and (2) whether an Intoxilyzer test has been fairly administered when the testing operator did not observe the subject for twenty minutes before administering the test. We respond affirmatively to the second issue and do not decide the first issue because we conclude, even if the statement was testimonial requiring *Miranda* warnings, admitting it in the absence of the warnings was harmless error.

At 12:23 a.m. on September 17, 1994, Chihanski was arrested by Officer Grant Schiller for driving under the influence (DUI). He did not inform Chihanski of her *Miranda* rights. Shortly after the arrest, Officer Schiller handcuffed Chihanski's hands behind her back and placed her in his patrol car. At that time Officer Schiller also checked Chihanski's mouth and determined she had nothing in her mouth. Chihanski then was taken to the Grand Forks Police Department.

Upon arriving at the police department, Officer Schiller left Chihanski in his patrol car while he checked in his weapon. He returned within moments and brought Chihanski to the booking room where he read her the implied consent advisory and asked her to take an Intoxilyzer test. Chihanski agreed to the test.

To be administered properly, an Intoxilyzer test requires the subject not have eaten, drunk, or smoked anything for twenty minutes before the test is conducted. Officer Schiller determined the required time period had passed by verifying the time of arrest, noting the current time on the clock in the booking room, and concluding at least forty minutes had elapsed. He also determined Chihanski had not eaten, drunk, or smoked anything because he had checked her mouth at the time of arrest, had her in his presence during the entire period in the booking room, and did not remove her handcuffs until she was taken to the correctional facility.

Sergeant Robert Johnson administered the Intoxilyzer test. He determined twenty minutes had passed by asking Officer Schiller the time of arrest and noting the current time on the Intoxilyzer machine. Sergeant Johnson himself did not observe Chihanski for twenty minutes to ensure she had not eaten, drunk, or smoked. He did, however, ask Chihanski if she had put anything in her mouth since the time of arrest, to which she responded "no." He also noticed Chihanski's handcuffs were in place and continued to be during the testing process. He then administered the test, which results were introduced in Chihanski's trial.

■ To secure the privilege against compelled self-incrimination, the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), imposed new procedural requirements upon the State in criminal prosecutions. *Id.* at 444, 86 S.Ct. at 1612. The fundamental requirement of *Miranda* is a warning to criminal defendants of their right to remain silent before making any statements to the State. *E.g., State v. Fasching*, 453 N.W.2d 761, 763 (N.D.1990) (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612). Statements made by a defendant without benefit of this warning are inadmissible as evidence in a prosecution of that defendant. *Id.*

■ *Miranda* warnings, however, are required only when a defendant is in custody and is being interrogated. *Id.* Moreover, even if custodial interrogation is present, the evidence elicited must be testimonial. *Id.* (citing *Schmerber v. California*, 384 U.S. 757, 764–65, 86 S.Ct. 1826, 1832–33, 16 L.Ed.2d 908 (1966)).

Turning to the present case, even if we assume the presence of custodial interrogation, we need not decide whether Chihanski's statement to Sergeant Johnson was testimonial. We conclude, even if the statement was testimonial, admitting it in the absence of *Miranda* warnings was harmless error.

■ The federal constitutional harmless error standard was first enunciated by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This court adopted the standard in *State v. Hilling*, 219 N.W.2d 164, 172 (N.D.1974). "Under the *Chapman* [standard], federal constitutional errors do not automatically require reversal if it is shown that they were harmless, but 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *State v. Flamm*, 351 N.W.2d 108, 110 (N.D.1984); N.D.R.Crim.P. 52(a), Explanatory Note. In declaring this belief, the court must be convinced "that the error did not contribute to the verdict." *Flamm*, 351 N.W.2d at 110. Furthermore, before making this declaration, the court must review the entire record and determine, in light of all the evidence, the probable effect of any con-

stitutional error upon a criminal defendant's rights. *State v. Schneider*, 270 N.W.2d 787, 793 (N.D.1978); N.D.R.Crim.P. 52(a), Explanatory Note.

■ Applying this standard to the present case, we believe the constitutional error of admitting a statement made without benefit of *Miranda* warnings had no effect upon Chihanski's rights. A review of the entire record reveals substantial evidence exists, without Chihanski's statement, supporting Officer Schiller's and Sergeant Johnson's determination that Chihanski had not eaten, drunk, or smoked for twenty minutes before taking the Intoxilyzer test. *See, e.g., State v. Carmody*, 253 N.W.2d 415, 419 (N.D.1977) (finding other substantial evidence of defendant's guilt). Officer Schiller had checked her mouth at the time of arrest, and the Intoxilyzer test was not taken until at least forty minutes later. In that forty-minute period, Chihanski was handcuffed behind her back, and the handcuffs were not removed. With the exception of a few moments in which Chihanski remained handcuffed in Officer Schiller's patrol car, she was never out of the presence of Officer Schiller. Before administering the test, Sergeant Johnson asked Officer Schiller the time of arrest, independently noted the current time on the Intoxilyzer machine, and concluded twenty minutes had passed. He also noticed Chihanski's handcuffs were in place and continued to be during the testing process.

The pre-testing determination made by both Officer Schiller and Sergeant Johnson would have been unaffected even if Chihanski had been informed of her *Miranda* rights. As discussed above, substantial evidence, other than Chihanski's statement, was available to make the determination. We are convinced that any constitutional error occurring in Chihanski's case did not contribute to her guilty verdict and therefore was harmless beyond a reasonable doubt.

Chihanski's second issue contends the Intoxilyzer test was not fairly administered because the testing operator, Sergeant Johnson, did not observe her for twenty minutes to ensure she had nothing to eat, drink, or smoke before taking the test. To support this argument, Chihanski relies on language

in *Bickler v. N.D. State Highway Comm'r*, 423 N.W.2d 146 (N.D.1988), in which this court stated:

> Under the Approved Method to Conduct Breath Test with Intoxilyzer, an officer must ascertain whether a subject has smoked, eaten or drunk anything before obtaining a sample of the subject's breath. The duty to assure the integrity of the sample requires the officer to maintain observation of the subject...."

*Id.* at 147–48 (citations omitted).

■ Fair administration of an Intoxilyzer test requires scrupulously following the approved method for conducting that test. *E.g., Moser v. N.D. State Highway Comm'r*, 369 N.W.2d 650, 653 (N.D.1985). But we do not equate scrupulous with hypertechnical. Chihanski places undue emphasis on *Bickler*'s "maintain observation" language and ignores the operative language of the approved method, which says that "the operator *must ascertain* that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." Approved Method to Conduct Breath Test with Intoxilyzer, Office of State Toxicologist, Apr. 29, 1994 (emphasis added). Common sense tells us that "observing" is not the exclusive manner of "ascertaining." *See, e.g.,* BLACK'S LAW DICTIONARY 114 (6th ed. 1990) (defining ascertain as "to find out by investigation").

*Bickler*'s statement that the officer must "maintain observation" of the subject to assure the integrity of the breath sample was appropriate given the facts of that case. Before agreeing to an Intoxilyzer test, Bickler called his attorney, who, upon arriving at the jail, requested a private conference with Bickler out of the view of the arresting officer. *Bickler*, 423 N.W.2d at 147. The officer refused the request. *Id.* On appeal, this court balanced the right to consult privately with an attorney with the need for an accurate and timely chemical test and concluded the "maintain observation," or "out of earshot," requirement, was an adequate balance. *Id.* at 148. Thus, *Bickler* is distinguishable from the present case because under *Bickler's* facts, "observing" would be the exclusive

manner of "ascertaining" the pre-test determination.

We are satisfied the approved method for conducting an Intoxilyzer test was scrupulously followed in this case. Although Sergeant Johnson himself did not observe Chihanski for twenty minutes before administering the test, he did ascertain the lapse of twenty minutes by asking Officer Schiller the time of arrest and independently noting the current time on the Intoxilyzer machine. *See State v. Rodriguez*, 454 N.W.2d 726, 729 n. 2 (N.D.1990) (stating "law enforcement officers must be allowed to rely upon information received from other officers"). He also ascertained that Chihanski had not eaten, drunk, or smoked by noticing her handcuffs were in place and continued to be during the testing process. Therefore, we believe Chihanski's Intoxilyzer test was fairly administered.

For the foregoing reasons, we affirm the trial court's judgment of conviction.

LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring in result.

Once having been placed in custody, which Joanne Chihanski surely was since she had been arrested and taken to the police station, any question asked of her without the warnings prescribed in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were asked at the risk that the answers might be suppressed. *See, e.g., State v. Fields*, 294 N.W.2d 404, 409 (N.D.1980) ["*Miranda* warnings should be given before questioning a person who is in custody or deprived of his freedom by the authorities for a more serious offense such as driving while intoxicated"]. But, the question of whether or not the person arrested is willing to submit to the request to take a test for intoxication does not impinge on Fifth Amendment rights. *Fields, supra.* Chihanski had agreed to take the test. I believe the question whether she had put anything in her mouth since the time of arrest was but a part of the question of whether or not she was willing to take the test and also did not implicate the Fifth Amendment. When or if

the answer to the question is attempted to be used for purposes other than to demonstrate the fair administration of the test is the time to raise the *Miranda* issue. *Compare State v. Satrom*, 524 N.W.2d 92 (N.D.1994); *State v. Beaton*, 516 N.W.2d 645 (N.D.1994).

I encourage law enforcement officers to give *Miranda* warnings when placing persons, including persons arrested for DUI, in custody. Any confusion between the warning and the person's responsibility to answer the request to take the test is easy to avoid. *See* NDCC § 39–20–01 [officer to inform person charged that refusal to take test will result in license revocation]. *Hammeren v. North Dakota State Highway Comm'r*, 315 N.W.2d 679 (N.D.1982) [officer should inform person arrested that if he refuses to take test, whether by silence or negative answer, that license is subject to suspension]. It is fortuitous for the officers that nothing more than the answer to the question preparatory to administering the test is involved here.

Nevertheless, because I do not believe the answer to this question is testimonial for the purpose of showing fair administration of the test, the majority's "harmless error" analysis under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) is unnecessary. I concur in the result.

SANDSTROM, J., concurs.