2000 ND 168

**CITY OF WEST FARGO, Plaintiff and Appellee,**

**v.**

**Kenneth Donald HAWKINS, Defendant and Appellant.**

**No. 990351.**

Supreme Court of North Dakota.

Sept. 6, 2000.

Timothy M. O'Keeffe, City Prosecutor, Fargo, N.D., for plaintiff and appellee.

Tami L. Norgard, Vogel, Weir, Hunke & McCormick, Ltd., Fargo, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Kenneth Donald Hawkins appealed from a judgment of conviction for driving under the influence ("DUI"). We affirm, concluding the evidence was sufficient to support the conviction and the trial court did not err in admitting into evidence the analytical blood test report.

I

[¶ 2] Hawkins was involved in an automobile accident at approximately 3:30 p.m. on May 29, 1999, on Main Avenue in West Fargo. Hawkins attempted to walk away from the accident scene and was stopped by Officer Sall of the West Fargo Police Department. Officer Sall noticed a strong odor of alcohol coming from Hawkins. Officer Sall transported Hawkins back to the accident scene in the back of his patrol car. Hawkins failed field sobriety tests and was arrested for DUI.

[¶ 3] Officer Sall transported Hawkins to a local hospital where Brenda Johnson, a registered nurse, drew a blood sample from Hawkins. Johnson completed and signed the portion of Form 104, included in the blood kit, indicating she had drawn the blood in accordance with the State Toxicologist's approved method.

[¶ 4] Officer Sall completed the rest of Form 104, including the checklist indicating the various steps outlined by the State Toxicologist had been followed. One of those checked items states: "Affixed tamper-evident kit box shipping seal on kit box." Officer Sall admitted at trial that, although he checked that item while still at the hospital, he actually had not at that time placed the shipping seal on the kit box. He testified, however, that the blood kit box remained in his possession at all times, and he placed the shipping seal on the box a short time later.

[¶ 5] The case was originally venued in municipal court, but was transferred to district court upon Hawkins's request for a jury trial. Although the original uniform traffic complaint erroneously listed the date of the offense as May 28, 1999, the copy of the uniform complaint filed with the district court had been changed to show the correct date, May 29, 1999. Hawkins's counsel concedes she received a copy of the complaint with the corrected date of the offense prior to trial.

[¶ 6] Defendant's pre-trial motion to suppress the Form 104 and blood test results, which showed Hawkins's blood alcohol content at .25 percent, was denied. Trial was held on November 16–17, 1999, and the jury returned a verdict finding Hawkins guilty of DUI.

## II

[¶ 7] Hawkins asserts he was entitled to a verdict of acquittal as a matter of law because the complaint charged him with committing the offense on May 28, 1999, but all of the evidence at trial related to conduct occurring on May 29, 1999. He therefore argues this Court must reverse the conviction and dismiss the DUI charge because there was insufficient evidence to convict him of the offense charged.[1]

[¶ 8] The primary purpose of a criminal complaint or information is to fairly inform the accused of the charges against him to enable him to prepare for trial. *City of Fargo v. Schwagel*, 544 N.W.2d 873, 874 (N.D.1996); *State v. Gahner*, 413 N.W.2d 359, 361 (N.D.1987); N.D.R.Crim.P. 7(c), Explanatory Note. In considering the sufficiency of the criminal information, technicalities have been abolished, and mere defects, inaccuracies, or omissions do not affect the proceedings unless, as a result, no offense is charged. *City of Grand Forks v. Mata*, 517 N.W.2d 626, 628 (N.D.1994).

[¶ 9] There is no argument here that Hawkins was not informed of the charge against him, that he was unfairly surprised at trial, or that he was prejudiced in his ability to prepare a defense. The original uniform traffic complaint indicated the correct day of the week of the offense, Saturday, but erroneously listed the date as May 28 instead of May 29. Hawkins's counsel received a copy of the complaint with the corrected date in advance of trial. At the suppression hearing on October 19, 1999, a month before trial, Hawkins's counsel questioned Officer Sall about the incorrect date on the complaint. The record demonstrates Hawkins was aware before trial that the date on the complaint was wrong, and he does not argue he did not have notice or that his ability to present a defense was affected by the error.

[¶ 10] Our prior cases establish that an erroneous date in the criminal complaint or information is not reversible error unless the date is an essential element of the crime charged:

> We hold that unless time is an essential element of an offense, it is not required in a criminal prosecution that the crime be proved to have been committed on the precise date or time period alleged in the complaint or information. It is sufficient that the State prove the commission of the crime charged at any time prior to the filing of the complaint and within the period fixed by the applicable limitations statute.

*State v. Hatch*, 346 N.W.2d 268, 276 (N.D. 1984); *see also State v. Vance*, 537 N.W.2d 545, 549 (N.D.1995).

[¶ 11] Hawkins asserts the date of the offense is an element of the crime of DUI which must be properly pleaded in the complaint. "Element of an offense" is defined in N.D.C.C. § 12.1–01–03(1):

> "Element of an offense" means:
> a. The forbidden conduct;
> b. The attendant circumstances specified in the definition and grading of the offense;
> c. The required culpability;
> d. Any required result; and
> e. The nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue.

[¶ 12] Hawkins argues that, because the "per se" DUI offense requires the prosecution to establish he had a blood alcohol concentration of at least .10 percent within two hours of driving, the time and date become an element of the offense. *See* N.D.C.C. § 39–08–01(1)(a). The prosecution is only required to show the driving and the blood alcohol testing occurred within two hours of each other. It is entirely immaterial whether those events

---

1. For purposes of this issue, we will assume the complaint was never properly amended, although the copy in the district court's file bears the correct date. The prosecution did not show how or when the copy filed with the court was changed to reflect the correct date.

occurred on May 28 or May 29, as long as they occurred within two hours of each other. The date becomes an element only if there would be no crime if the conduct occurred on the date alleged in the complaint.[2] Under the circumstances in this case, the date of the offense is not an element of the crime of DUI. Accordingly, we reject Hawkins's argument the evidence was insufficient to convict him of the offense charged.

### III

[¶ 13] Hawkins argues the trial court erred in admitting the Form 104 and the analytical report showing his blood alcohol content was .25 percent. Hawkins claims the prosecution has failed to show the State Toxicologist's approved method was "scrupulously" complied with, and therefore has not established fair administration of the blood test.

### A

[¶ 14] Hawkins argues Officer Sall's failure to place the shipping seal on the blood kit box at the hospital, and checking that item on the checklist before he actually performed it, constitutes a deviation from the approved method and renders the blood test results inadmissible.

[¶ 15] Section 39–20–07, N.D.C.C., governs admissibility of blood test results:

Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol, drugs, or a combination thereof in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible. For the purpose of this section:

. . . .

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test.

. . . .

8. A certified copy of the analytical report of a blood, urine, or saliva analysis referred to in subsection 5 and which is issued by the state toxicologist must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5.

[¶ 16] In light of this statutory scheme, the State Toxicologist has drafted Form 104, which contains directions and a checklist to ensure proper collection and submission of blood samples. *See State v. Schwalk*, 430 N.W.2d 317, 322 (N.D.1988). When the State Toxicologist has established methods and procedures for conducting the requisite test, fair administration can be established by proof that those methods have been scrupulously followed. *See, e.g., State v. Chihanski*, 540 N.W.2d 621, 624 (N.D.1995); *Schwalk*, at 323. However, "scrupulous" compliance does not mean "hypertechnical" compliance. *McPeak v. Moore*, 545 N.W.2d 761, 762 (N.D.1996); *Chihanski*, at 624.

2. For example, a charge of minor in possession which lists an offense date after the defendant's twenty-first birthday would fail to charge a crime.

[¶ 17] We have explained the purpose of Form 104:

> The directions for sample collection and submission on Form 104 essentially comprise two components: the actual procedure for collecting and preserving the blood sample and the directions for submitting the sample to the State Toxicologist. The first component ensures that the scientific accuracy and reliability of the test are not affected by improper collection or preservation of the blood sample. The second component in effect provides an evidentiary shortcut for establishing chain of custody.

*Schwalk*, 430 N.W.2d at 322. We have drawn a distinction between deviations which may affect the scientific reliability of the test and those which do not. In *Schwind v. Director, North Dakota Department of Transportation*, 462 N.W.2d 147, 151–52 (N.D.1990), we concluded that, when there are deviations which go to the scientific accuracy of the test, the prosecution must prove fair administration of the test through expert testimony. However, when the deviation from the approved method could not have affected the reliability or accuracy of the test results, the deviation does not render the test results inadmissable. *Id.* at 152; *Heinrich v. North Dakota State Highway Commissioner*, 449 N.W.2d 587, 589 (N.D.1989).

[¶ 18] Officer Sall's admission he checked the box indicating he had affixed the tamper-evident shipping label to the blood kit box before he actually affixed the label might have affected his credibility, a matter for the trier of fact. But, this step goes to the chain-of-custody component under *Schwalk*, and could not have affected the scientific accuracy or reliability of the test results. Officer Sall cleared up any gap in the chain of custody when he testified the blood kit box remained in his possession at all times and he affixed the shipping label a short time after leaving the hospital. Under these circumstances, we conclude the trial court did not err in admitting the blood test results.

### B

[¶ 19] Hawkins further asserts the trial court erred in admitting the blood test results because N.D.C.C. § 39–20–07(8) requires the prosecution to introduce a certified copy of the analytical blood test report. Section 39–20–07(8), N.D.C.C., provides:

> A certified copy of the analytical report of a blood, urine, or saliva analysis referred to in subsection 5 and which is issued by the state toxicologist must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5.

[¶ 20] The challenged exhibit in this case, Exhibit 3, is a two-page document. The first page is an original, notarized statement signed by Aaron Rash, the State Toxicologist, certifying that the attached documents are identical to the originals on file at the Toxicology Laboratory, and that the analysis of Hawkins's blood had been performed by a certified operator according to the method and with a device approved by the State Toxicologist. Attached to Rash's certification page is a photocopy of the blood submission portion of Form 104 and the analytical blood test report.

[¶ 21] We have specifically approved use of this exact certification procedure. In *Tabert v. North Dakota Department of Transportation*, 1997 ND 39, ¶ 9, 560 N.W.2d 883, and *State v. Asbridge*, 555 N.W.2d 571, 574 (N.D.1996), we held that a separate certification page identical to the one in this case satisfied the certification requirements of N.D.C.C. § 39–20–07. We conclude the trial court did not err in admitting the analytical blood test report.

### IV

[¶ 22] We have considered the remaining arguments raised by Hawkins and find them to be without merit. The judgment of conviction is affirmed.

[¶ 23] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., JOHN C. McCLINTOCK, D.J., concur.

[¶ 24] The Honorable JOHN C. McCLINTOCK, JR., D.J., sitting in place of KAPSNER, J., disqualified.