2002 ND 23

**Deanna Lynn BUCHHOLZ, Plaintiff and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellant.**

**No. 20010211.**

Supreme Court of North Dakota.

Feb. 20, 2002.

Andrew Moraghan, Assistant Attorney General, Bismarck, ND, for defendant and appellant.

Deanna Lynn Buchholz (no appearance), plaintiff and appellee.

MARING, Justice.

[¶ 1]   The North Dakota Department of Transportation ("Department") appeals from a district court judgment reversing the Department's decision to suspend Deanna Buchholz's driving privileges for ninety-one days.   We reverse the judgment of the district court and reinstate the hearing officer's suspension of Buchholz's license.

I

[¶ 2]   On March 11, 2001, North Dakota Highway Patrol Officer Trevor Wahlen arrested Deanna Lynn Buchholz for driving under the influence of alcohol.   After arresting Buchholz, Officer Wahlen transported her to the Morton County Law Enforcement Center where she consented to an Intoxilyzer test.   The Intoxilyzer test administered by Officer Wahlen recorded Buchholz's blood alcohol concentration at .22 percent.   Officer Wahlen then issued Buchholz a temporary operator's permit and a Report and Notice.   Buchholz requested and received an administrative hearing on the suspension of her driving privileges.

[¶ 3]   During the hearing, Officer Wahlen testified he allowed Buchholz to use the restroom when they arrived at the Morton County Law Enforcement Center.  Buchholz was not supervised while she was in the restroom.   Officer Wahlen further testified that Buchholz emerged from the restroom at 1:43 a.m.   According to the Intoxilyzer test report, Buchholz provided her first breath sample at 2:05 a.m.   On the checklist submitted with the test re-

port, Officer Wahlen indicated Buchholz had nothing to eat, drink, or smoke in the twenty minutes prior to the administration of the Intoxilyzer test, as required by the State Toxicologist's approved method for operating the Intoxilyzer. However, at the hearing, he testified he did not physically look into Buchholz's mouth at any time prior to administering the test. Officer Wahlen also stated that, although he routinely instructs arrestees not to place anything in their mouths, he could not recall if he asked Buchholz if she had anything in her mouth prior to administering the Intoxilyzer test.

[¶ 4] After hearing Officer Wahlen's testimony, Buchholz objected to the admission of the Intoxilyzer test results on the ground that Officer Wahlen did not comply with the twenty-minute waiting period of the method approved by the State Toxicologist for conducting a breath test. The hearing officer overruled the objection and suspended Buchholz's driving privileges for ninety-one days.

[¶ 5] Buchholz appealed the hearing officer's decision to the district court. The district court found Officer Wahlen "made no notes and does not have a recollection of 'ascertain(ing) that the subject had nothing to eat, drink, or smoke within 20 minutes prior to the collection of the breath sample.'" Therefore, the court concluded the Intoxilyzer results were inadmissible and reversed the decision of the hearing officer. The Department appealed the district court's decision to this Court.

## II

■■■ [¶ 6] The Administrative Agencies Practices Act, N.D.C.C. ch. 28–32, governs our review of administrative license suspensions. *Houn v. N.D. Dept. of Transp.*, 2000 ND 131, ¶ 5, 613 N.W.2d 29. We limit our review to the record before the administrative agency, and we do not

review the decision of the district court. *Ringsaker v. Director, N.D. Dept. of Transp.*, 1999 ND 127, ¶ 5, 596 N.W.2d 328. We are required to affirm the agency's decision unless:

1) the decision is not in accordance with the law; 2) the decision violates the constitutional rights of the appellant; 3) provisions of the Administrative Agencies Practices Act were not complied with in the proceedings before the agency; 4) the agency's rules or procedures have not afforded the appellant a fair hearing; 5) the agency's findings are not supported by a preponderance of the evidence; or 6) the conclusions of law and the agency's decision are not supported by its findings of fact.

*N.D. Dept. of Transp. v. DuPaul*, 487 N.W.2d 593, 595 (N.D.1992). The findings of fact made by the Department at an administrative hearing are entitled to great deference. *Houn*, at ¶ 6. In reviewing the Department's findings, "we determine only whether a reasoning mind reasonably could have concluded the Department's findings were supported by the weight of the evidence from the entire record." *Id.*

## III

■■ [¶ 7] "Section 39–20–07(5), N.D.C.C., governs the admissibility of Intoxilyzer test results." *Ringsaker*, 1999 ND 127, ¶ 7, 596 N.W.2d 328. The statute provides, in pertinent part:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to

administer the test issued by the state toxicologist.

N.D.C.C. § 39–20–07(5). Fair administration of an Intoxilyzer test may be established by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed. *See McPeak v. Moore*, 545 N.W.2d 761, 764 (N.D.1996). "However, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *City of West Fargo v. Hawkins*, 2000 ND 168, ¶ 16, 616 N.W.2d 856.

■ [¶ 8] The portion of the State Toxicologist's approved method at issue in this case provides "[b]efore proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Approved Method to Conduct Breath Test with Intoxilyzer 5000 KB*, dated September 1, 2000. At the administrative hearing, Buchholz argued Officer Wahlen failed to comply with this portion of the approved method because he acknowledged he did not check Buchholz's mouth and could not recall if he asked her if she had anything in her mouth or if he told her not to put anything in her mouth. The hearing officer rejected this argument and concluded "Intoxilyzer testing was done in accordance with the state toxicologist's approved method, with results showing an alcohol concentration of .22 percent." On appeal, the Department contends the Intoxilyzer test results were properly admitted at the administrative hearing because the hearing officer could have reasonably concluded Officer Wahlen followed the approved method by observing Buchholz for twenty minutes after she emerged from the restroom. Thus, at issue is whether the State Toxicologist's approved method requires Intoxilyzer operators to ask subjects if they have anything in their mouths

or to look in their mouths prior to administering the Intoxilyzer test.

[¶ 9] While this is a question of first impression in North Dakota, the Oregon Court of Appeals has addressed related questions under a requirement very similar to the portion of the approved method at issue in this case. The requirement at issue in *State v. Kacalek*, 34 Or.App. 967, 580 P.2d 205 (1978) provided: "The operator must make certain the subject has not taken anything by mouth (drinking, smoking, eating, taking medications, etc.,) vomited, or regurgitated liquid from his stomach into his mouth for at least fifteen minutes before taking the test." *Id.* at 206 (quoting Or. Admin. R., ch. 333, § 13–020(1)(b)). The operator of the breathalyzer testified he observed the defendant in a small room for twenty minutes during which time the defendant did not take anything into his mouth, vomit, or regurgitate. *See id.* On cross-examination the operator testified he did not examine the inside of the defendant's mouth. *See id.* The defendant contended in order for an operator to comply with the "make certain" portion of the regulation, the operator must examine the inside of the defendant's mouth prior to administering the test. *See id.* The court rejected this argument reasoning "[t]he rule imposes no such requirement and we decline to amend the rule by holding, as a matter of law, it must be required." *Id.; see also State v. Snuggerud*, 153 Or.App. 300, 956 P.2d 1015, 1021 (1998) ("The officer's continuous observation of defendant . . . satisfied the rule's requirement."); *State v. Balderson*, 138 Or.App. 531, 910 P.2d 1138, 1142 (1996) (noting that absolute certainty is not required by the rule that the test operator "make certain" the subject has not taken anything by mouth).

[¶ 10] We find the Oregon Court of Appeal's opinions consistent with our prior

interpretations of the approved method. In *Bickler v. N.D. State Highway Comm'r*, 423 N.W.2d 146, 147–48 (N.D.1988), this Court stated:

> Under the Approved Method, ... an officer must ascertain whether a subject has smoked, eaten or drunk anything before obtaining a sample of the subject's breath. The duty to assure the integrity of the sample requires the officer to maintain observation of the subject, and necessarily limits the extent of the privacy reasonably available under the circumstances.

In *State v. Chihanski*, 540 N.W.2d 621, 624 (N.D.1995), our Court noted that "observing" the subject is not the only manner of "ascertaining" that the subject had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample. In *Chihanski*, the defendant argued the "operator" must have himself observed Chihanski for twenty minutes prior to the collection of the breath sample. *Chihanski*, at 624. After her arrest, Officer Schiller handcuffed Chihanski and checked her mouth. *Id.* at 623. He then transported her to the police station where she submitted to an Intoxilyzer test given by Sergeant Johnson. *Id.* Sergeant Johnson determined twenty minutes had passed before administering the test by asking Officer Schiller the time of arrest and noting the current time on the Intoxilyzer machine. *Id.* Sergeant Johnson also noticed the defendant's handcuffs were in place and continued to be in place throughout the testing process. *Id.*

[¶ 11] On these facts, we concluded the approved method's requirement that "[b]efore proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample," was scrupulously followed. *Id.* at 625. We reached this conclusion independent of the defendant's statement to Sergeant Johnson that she had not put anything in her mouth since the time of the arrest. *See id.* at 624 and 625. Furthermore, although Officer Schiller may have determined there was nothing in the defendant's mouth at the time of the arrest, nothing in our opinion indicated this information was relayed to the test operator, Sergeant Johnson. *See id.* at 623. Nor did we suggest Sergeant Johnson checked Chihanski's mouth before administering the test. *See id.* Thus, we implied in *Chihanski* that the approved method does not require operators to look into subjects' mouths or to ask subjects if they have anything in their mouths prior to administering an Intoxilyzer test. *See id.* at 625. In addition, it is clear that an operator's observation that a subject did not eat, drink, or smoke in the twenty minutes prior to the test satisfies the approved method. *See id.* at 624 (citing *Bickler*, 423 N.W.2d at 147–48).

[¶ 12] We conclude the State Toxicologist's approved method does not require test operators to ask subjects if they have anything in their mouths or to check their mouths prior to administering the test. Although test operators are encouraged to take such precautions,[1] the approved meth-

---

1. The North Dakota Prosecutor's Manual for DUI cases makes the following recommendation:

> In order to avoid allegations of insufficient observation and examination concerning the 20–minute waiting period, the breath test operator should actually check the driver's mouth before the administration of the test in addition to asking the driver concerning the contents of his mouth for the previous 20 minutes. The operator can then record the driver's comments and his own investigation on the remarks portion of the Intoxilyzer Test Record and Checklist, Form 106–I. Some prosecutors recommend a visual check at the time of the arrest and

od imposes no such requirements, and we decline to amend it by holding that it does. *See Kacalek,* 580 P.2d at 206. In this case, the evidence established Officer Wahlen continuously observed Buchholz for twenty minutes prior to administering the Intoxilyzer test, during which time she had nothing to eat, drink, or smoke. Buchholz presented no evidence to rebut this. Based on this evidence, the hearing officer could have reasonably concluded the approved method was scrupulously followed. *See Houn,* 2000 ND 131, ¶ 6, 613 N.W.2d 29. Thus, the Department established the Intoxilyzer test was fairly administered and the test results were properly received in evidence.

### IV

[¶ 13] We, therefore, reverse the judgment of the district court and reinstate the hearing officer's suspension of Buchholz's license.

[¶ 14] MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ. and GERALD W. VANDE WALLE, C.J., concur.

just prior to administration of the test, coupled with asking the driver if he or she has placed anything in his or her mouth within the twenty minute period. This may be asked at the time of arrest and at the time the test is conducted.

Bruce D. Quick, *I Only Had Two Beers: A North Dakota Prosecutor's Manual for DUI Cases* 2–9 (1984, revised 1999) (published by the North Dakota Attorney General's Office).