Filed 5/14/02 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2002 ND 84

Darin Lee Knoll, Petitioner and Appellant

v.

North Dakota Department

of Transportation, Respondent and Appellee

No. 20020059

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Benny A. Graff, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Chad R. McCabe, Vinje Law Firm, 523 North Fourth Street, Bismarck, N.D. 58501-4055, for petitioner and appellant.

Andrew Moraghan, Assistant Attorney General, Office of the Attorney General, 500 North Ninth Street, Bismarck, N.D. 58501-4509, for respondent and appellee.

Knoll v. N.D. Department of Transportation

No. 20020059

Sandstrom, Justice.

[¶1] Darin Lee Knoll appeals from a district court judgment affirming the North Dakota Department of Transportation’s decision to suspend his driver’s license.  We affirm, concluding (1) Knoll is barred from challenging the admissibility of his Intoxilyzer test results because he failed to reveal he had chewing tobacco in his mouth during the test, and (2) the outcome of Knoll’s related criminal matter is not relevant to his administrative proceeding.

 

I

[¶2] Knoll was stopped by North Dakota Highway Patrol Officer Trevor Wahlen for weaving over the fog line and lane-dividing line.  After he failed three roadside sobriety tests, Knoll was arrested for driving under the influence.  The officer took Knoll to the Burleigh County Law Enforcement Center, where he administered an Intoxilyzer test.  The test results indicated Knoll had a blood alcohol level of .10 percent.

[¶3] Knoll requested and received an administrative hearing.  At the hearing, Knoll argued the Intoxilyzer test was not fairly administered because he had chewing tobacco in his mouth at the time of the test.  Officer Wahlen testified he could not remember the exact questions he had asked Knoll, but stated he usually asked whether the person had anything in his or her mouth prior to taking a breath sample.  Knoll testified he thought the officer was referring only to food when the officer asked him whether he had anything in his mouth.  Knoll told the officer there was nothing in his mouth, even though he had chewing tobacco in his mouth when he took the Intoxilyzer test.  The hearing officer accepted the Intoxilyzer test results into evidence and suspended Knoll’s license for 91 days.

[¶4] Knoll appealed to the district court.  The district court, noting Knoll had failed to cooperate with the officer’s attempt to follow the approved method in giving the test, concluded Knoll could not challenge the admissibility of the test on the ground the approved method was not followed.

[¶5] Knoll made a timely request for a hearing under N.D.C.C. § 39-20-05.  The hearing officer had jurisdiction under N.D.C.C. § 39-20-05.  The notice of appeal from the administrative agency decision to the district court was properly filed within seven days under N.D.C.C. § 39-20-06.  The district court had jurisdiction under N.D.C.C. § 39-20-06.  The notice of appeal from the district court judgment was timely under N.D.C.C. § 28-32-21.  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-32-21.

 

II

[¶6] “The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs the review of an administrative agency decision to suspend a driver’s license.”  
Lapp v. N.D. Dep’t of Transp.
, 2001 ND 140, ¶ 6, 632 N.W.2d 419.  The record and decision of the administrative agency, not the ruling of the district court, are reviewed on appeal.  
McPeak v. Moore
, 545 N.W.2d 761, 762 (N.D. 1996).  “[R]eview is limited to the record before the agency.”  
Ringsaker v. Dir., N.D. Dep’t of Transp.
, 1999 ND 127, ¶ 5, 596 N.W.2d 328.  Under N.D.C.C. § 28-32-46, the Court is required to affirm the order of the agency, unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

 

“[W]hen reviewing the factual findings of an administrative agency ‘we do not make independent findings of fact or substitute our judgment for that of the agency.  We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.’”  
Bryl v. Backes
, 477 N.W.2d 809, 811 (N.D. 1991) (quoting 
Power Fuels, Inc. v. Elkin
, 283 N.W.2d 214, 220 (N.D. 1979)).  “This standard defers to the hearing officer’s opportunity to hear the witnesses’ testimony and to judge their credibility and we will not disturb the agency’s findings unless they are against the greater weight of the evidence.”  
Johnson v. N.D. Dep’t of Transp.
, 530 N.W.2d 359, 361 (N.D. 1995).

 

III

[¶7] Knoll contends chewing tobacco in his mouth invalidated his Intoxilyzer test.

[¶8] The method for accepting the results of chemical tests into evidence is set forth by N.D.C.C. § 39-20-07(5):

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist.

Certain “foundational requirements” are necessary to show a breath test was fairly administered.

“The foundational requirements . . . may be met either through testimony of the state toxicologist or through the introduction of certified copies of approved methods and techniques filed by the state toxicologist with the clerk of the district court pursuant to N.D.C.C. § 39-20-07.  Absent testimony by the state toxicologist, the foundational requirements necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court.  Thus, reliability and accuracy of the results are established by demonstrating compliance with the methods adopted by the state toxicologist.  Because the statute permits admission of such evidence without expert witness testimony to establish accuracy and reliability, all the requirements of the statute must be scrupulously met to ensure a uniform basis of testing throughout the State and fair administration.”

Ringsaker
, 1999 ND 127, ¶ 8, 596 N.W.2d 328 (quoting 
Moser v. N.D. State Highway Comm’r
, 369 N.W.2d 650, 653 (N.D. 1985)) (citations omitted).  Accordingly, an Intoxilyzer test is fairly administered when the method approved by the State Toxicologist for conducting the test is scrupulously followed.  
McPeak
, 545 N.W.2d at 764.

[¶9] The State Toxicologist’s approved method for conducting a breath test with an Intoxilyzer provides, in part, “[b]efore proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample.”  
Approved Method to Conduct Breath Test with Intoxilyzer
, dated September 1, 2000.  Prior case law has clarified the meaning of this directive.  Observing a subject for twenty minutes is one method to ascertain the subject did not have anything to eat, drink, or smoke within twenty minutes prior to the breath sample.  
Buchholz v. N.D. Dep’t of Transp.
, 2002 ND 23, ¶ 12, 639 N.W.2d 490.  Test operators are not required “to ask subjects if they have anything in their mouths or to check their mouths prior to administering the test.”  
Id.

[¶10] In 
Bryl v. Backes
, 477 N.W.2d 809 (N.D. 1991), a driver challenged the Department’s decision to suspend his license, alleging the approved method for administering an Intoxilyzer test was not followed.  The hearing officer found the driver “hid” a small amount of chewing tobacco in his mouth during the test.  
Id.
 at 813.  This Court concluded the driver had “deliberately attempted to distort the Intoxilyzer test by keeping tobacco in his mouth.”  
Id.
 at 813-14.  This Court explained its holding, stating:

In refusing to follow the reasonable requests of the operator in his conscientious attempt to follow appropriate instructions of the State Toxicologist in administering the Intoxilyzer test, [the driver] has, in effect, refused to take the test.  Reason dictates that he suffer the consequences of that refusal for the ultimate benefit of society.  We thus hold, if a person refuses to cooperate with an operator’s attempt to follow the State Toxicologist’s approved methods, the person cannot thereafter challenge the foundation for admissibility of the test results on the ground that the approved methods were not followed.

Id.
 at 814.  The hearing officer’s decision to allow the results of the driver’s Intoxilyzer test into evidence was upheld, and the license suspension was affirmed.  
Id.

[¶11] In this case, the hearing officer’s written decision states, in part:

Prior to Intoxilyzer testing, Trooper Wahlen asked Mr. Knoll if he had anything in his mouth.  The response was that Mr. Knoll did not have anything in his mouth.  Mr. Knoll had interpreted the trooper’s question to mean whether he had put any food into his mouth.  At that time, Mr. Knoll believed that he had nothing in his mouth, so he denied having anything in his mouth.  Later, perhaps an hour or more after testing was completed, Mr. Knoll noticed that he had a small amount of “chew” in his mouth, but he did not tell Trooper Wahlen this.  Intoxilyzer testing was done in accordance with the state toxicologist’s approved method, with results showing an alcohol concentration of .10% within two hours of the observed time of driving.

The hearing officer resolved the conflict over the specific language of the question in favor of the officer and concluded the officer had asked Knoll whether “he had anything in his mouth.”

[¶12] This case is similar to 
Bryl
 in several ways.  Knoll, like the driver in 
Bryl
, had chewing tobacco in his mouth during the test.  Officer Wahlen, like the officer in the 
Bryl
 case, was attempting to comply with the State Toxicologist’s approved method for obtaining a breath sample.  Both Knoll and the driver in 
Bryl
 claim the reliability of their test results was tainted because of the tobacco in their mouths.  Both arguments are based on their own actions, not on some failure by the officers conducting the tests.

[¶13] Although Knoll may have been more congenial than the driver in 
Bryl
, the alleged deviation from the State Toxicologist’s approved method was a result of his failure to inform the officer he had chewing tobacco in his mouth.  As we stated in 
Bryl
, “if a person refuses to cooperate with an operator’s attempt to follow the State Toxicologist’s approved methods, the person cannot thereafter challenge the foundation for admissibility of the test results on the ground that the approved methods were not followed.”  
Bryl
, 477 N.W.2d at 814.  We hold, if a person intentionally or unintentionally provides false information to an operator attempting to follow the State Toxicologist’s approved methods, the person cannot thereafter challenge the foundation for admissibility of the test results on the ground that the false information resulted in the approved methods not being followed.  Knoll provided false information to the officer attempting to follow the approved method, and he is not allowed to challenge the admissibility of the test results on the ground the approved method was not followed.

 

IV

[¶14] Knoll asks us to take judicial notice of a subsequent district court proceeding on his corresponding criminal charges.

[¶15] The proper method for receiving additional evidence following a decision of an administrative agency is set forth in N.D.C.C. § 28-32-45:

If an application for leave to offer additional testimony, written statements, documents, exhibits, or other evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that the additional evidence is relevant and material and that there were reasonable grounds for the failure to offer the evidence in the hearing or proceeding, or that the evidence is relevant and material to the issues involved and was rejected or excluded by the agency, the court may order that the additional evidence be taken, heard, and considered by the agency on terms and conditions as the court may deem proper.  After considering the additional evidence, the administrative agency may amend or reject its findings of fact, conclusions of law, and order and shall file with the court a transcript of the additional evidence with its new or amended findings of fact, conclusions of law, and order, if any, which constitute a part of the record with the court.

The record shows Knoll did not apply to the district court for leave to offer additional evidence.  Rather, Knoll attached a transcript of the district court proceeding to his brief in support of his appeal of the hearing officer’s decision and asked the district court to take judicial notice of the additional evidence, under N.D.R.Ev. Rule 201.

[¶16] This Court addressed the relevance of the outcome of corresponding criminal matters to an administrative license suspension in 
Williams v. N.D. State Highway Comm’r
, 417 N.W.2d 359 (N.D. 1987).  The Court stated:

A license suspension proceeding under § 39-20-05, N.D.C.C., “is an exercise of the police power for the protection of the public.”  
Asbridge v. North Dakota State Highway Comm’r
, 291 N.W.2d 739, 750 (N.D. 1980).  This court has often said that proceedings under Chapter 39-20, N.D.C.C., are civil in nature, separate and distinct from the criminal proceedings which may ensue from an arrest, and that a dismissal or acquittal of a related criminal charge is irrelevant to the disposition of the administrative proceedings.  
See, e.g.
, 
Pladson v. Hjelle
, 368 N.W.2d 508 (N.D. 1985); 
Asbridge v. North Dakota State Highway Comm’r
, 
supra
; 
Clairmont v. Hjelle
, 234 N.W.2d 13 (N.D. 1975).

Williams
, at 360.  This Court concluded a “court order suppressing evidence in a related criminal proceeding . . . is, like a dismissal or acquittal, irrelevant to the disposition of administrative proceedings under Chapter 39-20, N.D.C.C.”  
Id.

[¶17] The reduction in Knoll’s charges from driving under the influence to reckless driving and the accompanying transcript questioning the test results are not relevant to the administrative proceeding, nor did Knoll properly apply to the district court for leave to present this additional evidence.  The district court was correct in refusing to take judicial notice of the information contained in the transcript.

 

V

[¶18] Because Knoll is not allowed to challenge the admissibility of the Intoxilyzer results, and because the outcome of a related criminal matter is irrelevant to an administrative proceeding, we affirm the judgment suspending Knoll’s driving privileges for 91 days.

[¶19] Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.