2008 ND 53

**Dustin Scott BUCHHOLTZ,
Plaintiff and Appellee**

v.

**Director, NORTH DAKOTA DEPART-
MENT OF TRANSPORTATION,
Defendant and Appellant.**

No. 20070241.

Supreme Court of North Dakota.

March 20, 2008.

---

Jesse N. Lange (argued), Aaland Law Office, Fargo, ND, for plaintiff and appellee.

Andrew Moraghan (argued), Assistant Attorney General, Office of Attorney General, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] The North Dakota Department of Transportation ("Department") appeals a district court judgment reversing a Department decision revoking Dustin Buchholtz's driving privileges for 180 days. We reverse the judgment of the district court and reinstate the hearing officer's suspension of Buchholtz's license.

I

[¶ 2] On February 21, 2007, at approximately 12:50 a.m., highway patrol officer Trooper Michael Polomny stopped Buchholtz's vehicle after noting Buchholtz committed several traffic violations. Trooper Polomny approached the vehicle and smelled alcohol while speaking with Buchholtz. He also noted Buchholtz's eyes were bloodshot and his reactions seemed slow. Consequently, Trooper Polomny conducted an SD–2 onsite screening test. Buchholtz failed the test and was arrested for driving under the influence of alcohol. The arrest occurred at 1:04 a.m.

[¶ 3] Upon arrest, Trooper Polomny handcuffed Buchholtz, putting Buchholtz's hands in front of his body. Trooper Polomny testified that, after handcuffing Buchholtz, he patted Buchholtz down, checked his pockets, removed all items from his pockets, placed the items on the front seat of the patrol car, and then put Buchholtz in the backseat of the patrol car. Trooper Polomny then left Buchholtz in the back of the patrol car alone and went to Buchholtz's vehicle to speak with the passenger to explain Buchholtz had been arrested. The passenger said he felt he should not drive the vehicle and made a few phone calls, attempting to find someone to drive him home. The passenger did not find a ride, and after driving Buchholtz's vehicle off to the shoulder of the road, Trooper Polomny allowed the passenger into the front seat of the patrol car and drove the passenger home. Trooper Polomny estimated, and the hearing officer found, that Buchholtz was alone in the car for approximately five minutes while Trooper Polomny spoke with the passenger and moved Buchholtz's car.

[¶ 4] Trooper Polomny then took Buchholtz to the jail. During the drive, Trooper Polomny watched Buchholtz in the rearview mirror. After arriving at the jail, Trooper Polomny recited the implied consent advisory and asked Buchholtz to submit to an Intoxilyzer test. Buchholtz agreed to submit to the test. Trooper Polomny asked Buchholtz if he had anything in his mouth. Buchholtz replied that he did not, and Trooper Polomny checked his mouth and observed that there was nothing in Buchholtz's mouth.

[¶ 5] The Intoxilyzer test began, and Buchholtz provided the first breath sample at 1:24 a.m. and the second breath sample at 1:29 a.m. Buchholtz's reported alcohol concentration was .20 percent by weight. Trooper Polomny noted on the test record's checklist that the twenty-minute waiting period had been ascertained.

[¶ 6] After completing the Intoxilyzer test, Trooper Polomny issued a Report and

Notice to Buchholtz. Buchholtz requested an administrative hearing. At the hearing, Buchholtz argued Trooper Polomny failed to comply with the approved method's twenty-minute waiting period before administering the Intoxilyzer test because Trooper Polomny was absent for five of the twenty minutes before the test. The hearing officer rejected Buchholtz's argument, finding that, despite the five-minute period where Trooper Polomny did not actually watch Buchholtz, reasonable inferences supported the conclusion that the twenty-minute waiting period was met, because watching Buchholtz was not the only way the trooper could have ascertained Buchholtz had nothing to eat, drink, or smoke during the twenty-minute period. The hearing officer issued a decision recommending the suspension of Buchholtz's driving privileges for 180 days.

[¶ 7] Buchholtz appealed the Department's decision to district court. The district court reversed the decision of the Department and found Trooper Polomny failed to ascertain Buchholtz had nothing to eat, drink, or smoke for at least twenty minutes prior to the Intoxilyzer test because there was "a gap where the Trooper certainly was not looking in his rear view mirror to check on Dustin Buchholtz, and he was not speaking with him or observing him." Thus, the district court decided there was "certainly a break in the twenty minute time frame" needed for compliance with the approved method. The district court further found it problematic that the transcript from the administrative hearing was not clear about whether Trooper Polomny asked Buchholtz if he had anything in his mouth upon arrest and instead "he [Trooper Polomny] says he did that was just prior to commencing the test, and that was approximately at 1:23 a.m." On these grounds, the district court reversed the Department's decision.

[¶ 8] The Department appeals, arguing the district court erred in reversing the suspension of Buchholtz's driving privileges for 180 days.

## II

[¶ 9] The Administrative Agencies Practices Act, N.D.C.C. ch. 28–32, governs this Court's review of administrative license suspensions. *Buchholz v. N.D. Dep't of Transp.*, 2002 ND 23, ¶ 6, 639 N.W.2d 490 (citing *Houn v. N.D. Dep't of Transp.*, 2000 ND 131, ¶ 5, 613 N.W.2d 29). The review is limited to the record before the administrative agency. *Buchholz*, at ¶ 6 (citing *Ringsaker v. Director, N.D. Dep't of Transp.*, 1999 ND 127, ¶ 5, 596 N.W.2d 328). "We give deference to the administrative agency's findings and will not make independent findings or substitute our judgment for that of the agency." *Hanson v. Director, N.D. Dep't of Transp.*, 2003 ND 175, ¶ 7, 671 N.W.2d 780 (citing *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161). Instead, this Court determines only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Sonsthagen*, at ¶ 7. "Although our review is limited to the record before the administrative agency, the district court's analysis is entitled to respect if its reasoning is sound." *Hanson*, at ¶ 7 (quoting *Obrigewitch v. Director, N.D. Dep't of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73) (internal quotations omitted). Questions of law are fully reviewable on appeal. *Hanson*, at ¶ 7. This Court is required to affirm an administrative agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

■ [¶ 10] "The admissibility of an Intoxilyzer test result is governed by N.D.C.C. § 39–20–07(5)." *Johnson v. N.D. Dep't of Transp.*, 2004 ND 59, ¶ 11, 676 N.W.2d 807 (citing *Buchholz*, at ¶ 7). The relevant portion of this statute provides:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

N.D.C.C. § 39–20–07(5). "Fair administration of an Intoxilyzer test may be estab-lished by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed." *Buchholz*, at ¶ 7 (citing *McPeak v. Moore*, 545 N.W.2d 761, 764 (N.D.1996)). " 'However, "scrupulous" compliance does not mean "hypertechnical" compliance.' " *Buchholz*, at ¶ 7 (quoting *City of West Fargo v. Hawkins*, 2000 ND 168, ¶ 16, 616 N.W.2d 856).

■ [¶ 11] The issue in this case is the State Toxicologist's approved method for administering a breath test with an Intoxilyzer; the approved method requires that "[b]efore proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample. . . ." Approved Method to Conduct Breath Tests with the Intoxilyzer 5000 KB–EP, dated July 1, 2006. In order to comply with the approved method, Trooper Polomny had to "ascertain" Buchholtz had nothing to eat, drink, or smoke within the twenty minutes leading up to the collection of the breath samples. The district court held Trooper Polomny had not ascertained Buchholtz had nothing to eat, drink, or smoke within twenty minutes of the test because (1) Trooper Polomny did not maintain continuous observation of Buchholtz for the twenty-minute period between arrest and testing and (2) Trooper Polomny did not check Buchholtz's mouth upon arrest to ensure there was nothing in his mouth at the start of the period.

[¶ 12] This Court has "noted that 'observing' the subject is not the only manner of 'ascertaining' that the subject had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Buchholz*, at ¶ 10 (citing *State v. Chihanski*, 540 N.W.2d 621, 624 (N.D.1995)). In *Johnson*, 2004 ND 59, ¶ 18, 676 N.W.2d 807, the defendant ar-

gued that "there was no testimony provided to establish that he was continuously observed by the officer from the point of administration of the S–D2 test until the point of the Intoxilyzer test." This Court explained that "[a]lthough there was no testimony that the officer constantly observed Johnson, observation is not the exclusive method of ascertaining whether the twenty-minute requirement has been met." *Johnson*, at ¶ 18 (citing *Chihanski*, 540 N.W.2d at 624). In *Johnson*, the Court explained that "a fact-finder can draw reasonable inferences from the evidence" and that "[i]t is not unreasonable for a fact-finder to infer that a person who had been handcuffed behind his back and had remained in police custody would have had nothing to eat, drink, or smoke during that time." *Id.* (citations omitted). While Buchholtz's hands were not handcuffed behind his body, he was patted down, his pockets were emptied, all items retrieved from his pockets were placed on the front seat of the patrol car, and he was placed in the back seat during the five-minute period in which Trooper Polomny was not actually watching him. These facts, like those in *Johnson*, would permit a reasonable fact-finder to infer Buchholtz did not put anything in his mouth during this five-minute period.

[¶ 13] Regarding the district court's concern for Trooper Polomny's failure to check Buchholtz's mouth upon arrest, this Court has "conclude[d] the State Toxicologist's approved method does not require test operators to ask subjects if they have anything in their mouths or to check their mouths prior to administering the test." *Buchholz*, 2002 ND 23, ¶ 12, 639 N.W.2d 490. The Court "encouraged" test operators to check the mouths of those whom they test, but declined to impose such a requirement. *Id.* Therefore, the fact that Trooper Polomny did not check Buchholtz's mouth at the time of arrest does not suggest he failed to comply with the approved method.

[¶ 14] Because scrupulous, but not hypertechnical, compliance is required and because a fact-finder may draw reasonable inferences based on the evidence presented, the district court erred in reversing the decision of the Department. The Department established the Intoxilyzer test was fairly administered in accordance with the approved method. We reverse the judgment of the district court and reinstate the hearing officer's suspension of Buchholtz's license.

[¶ 15] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.