2009 ND 126

**Chance STEINMEYER, Petitioner and Appellee**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

**No. 20090096.**

Supreme Court of North Dakota.

July 9, 2009.

Ashley Erin Holmes, Dickinson, ND, for petitioner and appellee.

Andrew Moraghan, Assistant Attorney General, Bismarck, ND, for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] The North Dakota Department of Transportation appeals from a district court judgment reversing an administrative hearing officer's decision that suspended the driving privileges of Chance Steinmeyer for 91 days. Because a reasoning mind reasonably could conclude that the arresting officer ascertained a 20–minute waiting period before administering the Intoxilyzer test, we reverse the district court judgment and reinstate the Department's decision.

I

[¶ 2] On October 4, 2008, at 10:30 p.m., a Dickinson police officer stopped Steinmeyer's vehicle for an equipment violation. After approaching the vehicle and speaking with Steinmeyer, the officer smelled an alcoholic beverage odor emanating from inside the vehicle. Although Steinmeyer denied consuming alcohol, the officer brought Steinmeyer back to his patrol vehicle. The officer determined the alcoholic odor was coming from Steinmeyer's mouth.

[¶ 3] The officer conducted several field sobriety tests and an S–D2 onsite screening test. The officer testified that after ascertaining the three-minute waiting period, he administered the S–D2 test at

10:39 p.m., which estimated Steinmeyer had an alcohol concentration of .048 percent by weight. The officer also testified during cross-examination that he had checked Steinmeyer's mouth before administering the S–D2 test at 10:34 p.m. The officer informed Steinmeyer that he would be cited for having consumed alcohol as a minor, and had Steinmeyer submit to an Intoxilyzer test at the law enforcement center. The officer testified he administered the Intoxilyzer test after ascertaining a 20–minute waiting period. The initial Intoxilyzer test results showed that Steinmeyer had an alcohol concentration of .03 percent by weight at 10:53 p.m.

[¶ 4] The officer issued Steinmeyer a report and notice form, including a temporary operator's permit, for driving under 21 years of age while having alcohol or drugs in his system. Steinmeyer requested an administrative hearing before the Department. Following an October 2008 hearing, the hearing officer issued findings of fact, conclusions of law, and a decision suspending Steinmeyer's driving privileges for 91 days. Steinmeyer appealed the administrative decision to the district court.

[¶ 5] In January 2009, the district court reversed the administrative suspension of Steinmeyer's driving privileges. The court concluded there was no evidence in the record "that would indicate that the officer was able to say one way or another whether or not there was something in the subject's mouth [before 10:34 p.m.]. Thus, the only evidence is that at 10:34 the officer started a time frame under which he could state there was nothing in the subject's mouth." Since Steinmeyer had provided his first Intoxilyzer breath sample at 10:53 p.m., the court concluded the test was commenced too early and the approved method was not followed. The court held the hearing officer erred in admitting the Intoxilyzer test results into evidence and reversed the suspension of

Steinmeyer's driving privileges. The Department appealed from the district court's judgment.

[¶ 6] Steinmeyer timely requested a hearing under N.D.C.C. § 39–20–05. The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. The notice of appeal from the administrative agency decision to the district court was properly filed within seven days under N.D.C.C. § 39–20–06. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 39–20–06. The Department filed a timely notice of appeal from the district court judgment under N.D.C.C § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

II

■ [¶ 7] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of an administrative suspension of a driver's license. *Sturn v. Director, North Dakota Dep't of Transp.*, 2009 ND 39, ¶ 6, 763 N.W.2d 515. This Court is required to affirm an administrative agency decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of [N.D.C.C. ch. 28–32] have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 8] On appeal from the district court's review, this Court also reviews the administrative agency's decision. N.D.C.C. § 28–32–49; *Sturn*, 2009 ND 39, ¶ 7, 763 N.W.2d 515. This Court "review[s] an appeal from the determination of an administrative agency based only on the record filed with the court." N.D.C.C. § 28–32–46; *see Sturn*, at ¶ 7. "When reviewing an administrative agency's factual findings, we do not make independent findings of fact or substitute our judgment for that of the agency." *Kiecker v. North Dakota Dep't of Transp.*, 2005 ND 23, ¶ 8, 691 N.W.2d 266 (quotations omitted). We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). This Court reviews questions of law de novo and gives deference to the Department's sound findings of fact. *Sturn*, at ¶ 7; *Sayler v. North Dakota Dep't of Transp.*, 2007 ND 165, ¶ 7, 740 N.W.2d 94.

[¶ 9] Section 39–20–07(5), N.D.C.C., governs the admissibility of an Intoxilyzer test result. *Buchholtz v. Director, North Dakota Dep't of Transp.*, 2008 ND 53, ¶ 10, 746 N.W.2d 181. This section, in relevant part, states:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

N.D.C.C. § 39–20–07(5). "Fair administration of an Intoxilyzer test may be established by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed. However, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Buchholtz*, at ¶ 10 (internal quotation and citation omitted). The part of the State Toxicologist's approved method at issue in this case provides, "Before proceeding, the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample by answering the question '20 MIN WAIT? Y/N.'" *Approved Method to Conduct Breath Tests with the Intoxilyzer 5000 KB–EP*, dated August 1, 2008.

III

[¶ 10] The Department argues that a reasoning mind reasonably could conclude that the officer ascertained a 20–minute waiting period before administering the Intoxilyzer test. The Department argues that Steinmeyer failed to rebut the prima facie evidence that the officer waited 20 minutes.

[¶ 11] The Intoxilyzer test record and checklist, which was marked as Exhibit 1c, was admitted into evidence at the hearing over Steinmeyer's objection and states the 20–minute waiting period was ascertained. The test record, signed by the officer, also states that the officer "followed the approved method and the instructions displayed by the intoxilyzer in conducting this

test." After the hearing, the hearing officer concluded:

[The officer] had Steinmeyer under direct observation while conducting the HGN, walk-and-turn, and one-leg-stand tests which preceded the S–D2 test. The later test began at 10:34 p.m., when the officer checked Steinmeyer's mouth. Presumably, if Steinmeyer had put anything in his mouth while the officer was conducting the first three field sobriety tests, the officer would have noted this. The officer was never questioned about this. Steinmeyer did not testify. There is nothing, other than speculation, upon which to assume Steinmeyer had anything in his mouth during the 20–minutes before he took the Intoxilyzer test. Exhibit 1c is prima facie evidence that the 20–minute wait period was observed. No evidence was offered to directly contradict it.

■ [¶ 12] "'[O]bserving' the subject is not the only manner of 'ascertaining' that the subject had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Buchholz v. North Dakota Dep't of Transp.*, 2002 ND 23, ¶ 10, 639 N.W.2d 490. "[T]he State Toxicologist's approved method does not require test operators to ask subjects if they have anything in their mouths or to check their mouths prior to administering the test." *Id.* at ¶ 12. Although test operators are encouraged to do so, this Court has declined to impose a requirement to check the mouths of the test subjects. *Id.*; *see also Buchholtz*, 2008 ND 53, ¶ 13, 746 N.W.2d 181.

[¶ 13] In *Buchholz*, 2002 ND 23, ¶¶ 3, 12, 639 N.W.2d 490, the police officer testified that he did not physically look into the defendant's mouth at any time prior to administering the Intoxilyzer test and could not recall whether he had asked the defendant if she had anything in her mouth prior to administering the test.

Nonetheless, this Court held that the evidence established the officer continuously observed Buchholz for 20 minutes prior to administering the test, during which time the defendant had nothing to eat, drink, or smoke. The defendant presented no rebuttal evidence. *Id.* at ¶ 12. In *Johnson v. North Dakota Dep't of Transp.*, 2004 ND 59, ¶ 15, 676 N.W.2d 807, the defendant asserted that the evidence showed he was arrested at 1:32 a.m., arrived at the correction center at 1:35 a.m., and gave a first breath sample at 1:51 a.m. The defendant thus argued there was no foundation for the Intoxilyzer test because there was a maximum of 16 minutes between the time the police officer ascertained whether the defendant had anything to eat, drink, or smoke and the time the breath sample was collected. *Id.* The officer, however, testified that five minutes before administering the S–D2 test, he checked the defendant's mouth, and that after the S–D2 test, Johnson was placed under arrest at 1:32 a.m., and therefore, the officer checked defendant's mouth at approximately 1:27 a.m. *Id.* at ¶ 16. This Court held that despite a lack of testimony that the officer had constantly observed the defendant, it was not unreasonable for the fact-finder to infer that a person who was handcuffed behind his back and remained in police custody would have had nothing to eat, drink, or smoke during that time. *Id.* at ¶¶ 17–18.

[¶ 14] In *Buchholtz*, 2008 ND 53, ¶¶ 2–5, 746 N.W.2d 181, the police officer arrested the defendant at 1:04 a.m., and took the first breath sample at 1:24 a.m. The officer's testimony also established that the defendant was alone in the patrol car for approximately five minutes while the officer spoke with the defendant's passenger and moved the defendant's car. *Id.* at ¶¶ 3, 6. Although the defendant's hands were not handcuffed behind his body, the defendant had been patted down, his pock-

ets had been emptied, all items retrieved from his pockets were on the front seat of the patrol car, and the defendant was in the back seat during the five-minute period. *See id.* at ¶ 12. As in *Johnson,* this Court held these facts permitted a reasonable fact-finder to infer Buchholtz did not put anything in his mouth during the five-minute period. *Id.*

[¶ 15] Here, while being questioned regarding the three-minute waiting period for the S–D2 during cross-examination, the officer testified he had checked the defendant's mouth at 10:34 p.m., 19 minutes before giving the initial Intoxilyzer test at the law enforcement center. On appeal, Steinmeyer argues that 10:34 was the "first and only possible starting point for observation of the twenty-minute wait period." Steinmeyer further argues the hearing officer made a "factual inference" unsupported by the evidence presented and the only "reasonable inference" is that "the Intoxilyzer test was given 19 minutes after [the officer] made his initial observation of Steinmeyer's mouth." As previously stated, however, test operators are not required to check test subjects' mouths. *Buchholtz,* 2008 ND 53, ¶ 13, 746 N.W.2d 181; *Buchholz,* 2002 ND 23, ¶ 12, 639 N.W.2d 490.

[¶ 16] According to the report and notice form and the officer's testimony, Steinmeyer was stopped at 10:30 p.m., was administered the S–D2 test at 10:39 p.m., was arrested at 10:42 p.m., and was given his first Intoxilyzer breath test at 10:53 p.m. Therefore, 23 minutes passed between the officer's first encounter with Steinmeyer and the initial Intoxilyzer test at the law enforcement center. The officer testified unequivocally that he ascertained a 20–minute period before giving the Intoxilyzer test, and the Intoxilyzer test record also states that he ascertained the 20–minute waiting period and followed the approved method and instructions in ad-

ministering the Intoxilyzer test. Steinmeyer did not testify, nor did he rebut this prima facie evidence. We conclude there is direct evidence in the record supporting the hearing officer's finding that the police officer observed a 20–minute waiting period before administering the Intoxilyzer test.

## IV

[¶ 17] Because a reasoning mind reasonably could conclude that the arresting officer ascertained a 20–minute waiting period before administering the Intoxilyzer test, we reverse the district court's judgment and reinstate the hearing officer's decision to suspend Steinmeyer's driving privileges for 91 days.

[¶ 18] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.